HALL, Judge,
dissenting.
I would affirm the trial court’s order granting a permanent injunction against appellants.
The trial judge, after listening to extensive testimony and examining the evidence presented by the parties, found that appellants were utilizing their apartments as a *150 migrant labor camp. He permanently enjoined and restrained them from operating a migrant labor camp and nuisance upon their property.
My learned colleagues have held that the Code of the City of Arcadia does not define migrant labor camp and that the court must look to the Florida Statutes for a definition of migrant labor camp. They reason that, even though section 381.422(3), Florida Statutes (1985), defines migrant labor camp as the type of dwelling operated by appellants, the property cannot be a migrant labor camp because the statute exempts any public lodging establishment licensed pursuant to chapter 509, regardless of its actual use.
I would not so strictly construe the statute to exempt a dwelling which is in fact a migrant labor camp from the definition of one just because it is licensed as a public lodging establishment. The statute provides that a public lodging establishment shall be licensed pursuant to chapter 509, and this chapter places upon the owner/operator certain duties with which he must comply or his license is subject to suspension or revocation. It also places a duty upon the state to determine whether the property is properly classified as a public lodging establishment and whether the owner/operator has complied with all of the necessary duties as required by the statute before it is licensed under chapter 509.
In the instant case, the facts show that the state inspector, Mr. Bell, did not personally inspect the apartments but that he arrived at his classification of the property because of what he was told by a former employee of the Division of Hotels and Restaurants. The record discloses that the owner/operator did not post room rates in each room or apartment as required by section 509.201(1), Florida Statutes, nor did he maintain at all times a register signed by or for guests who occupy rooms within the establishment, showing the dates upon which the rooms were occupied by such guest and the rates charged for their occupancy as required by section 509.101(2), Florida Statutes. Section 509.261(1)(a) provides that: “the division of hotels and restaurants may suspend or revoke the license of any public lodging establishment that has operated or is operating in violation of any of the provisions of this chapter; ... such public lodging establishment shall remain closed during the suspension or revocation of such license.”
It is apparent from the record that had Mr. Bell, the state inspector, properly inspected the property, he would have determined that it did not comply with requirements as set forth in chapter 509 and was not entitled to licensing thereunder.
I do not believe that the legislature intended to prohibit the court from utilizing the definition of a migrant labor camp as defined in section 381.422(3), where the licensing by the state under chapter 509 is shown to be improper and not according to the statutory requirements. The fact that a dwelling house is improperly licensed under section 509, Florida Statutes, should not estop the city from determining that the building was in fact used as a migrant labor camp.